IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES | ) | 08CV4156 |
| | ) | JUDGE KENDALL |
| v. | ) | MAG. JUDGE MASON |
| | ) | Case No. of State Court Conviction |
| STEVIE MCNEIL, PETITIONER | ) | 00 CR 8631 |
| | ) | |

STATEMENT OF ISSUES AND MEMORANDUM OF LAW
IN SUPPORT OF HABEAS CORPUS RELIEF

Facts:

On, April 24, 2002, Petitioner following a jury trial was found guilty on the charge of First Degree Murder and sentenced to a term of 50 years of imprisonment.

ISSUES:

Judicial Error, Violation of Due Process and Equal Protection under the Law.

Ineffective Assistance of Counsel at each critical stage of Criminal prosecution and Appellate process.

Prosecutorial Misconduct.

Fraud Upon The Court.

FILED
JUL 22, 2008
JUL 2 2 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

1.

JUDICIAL ERROR, VIOLATION OF DUE PROCESS AND EQUAL PROTECTION UNDER THE LAW, VIOLATION OF INTERSTATE AGREEMENT ON DETAINERS ACT.

On, January 28, 1999, Petitioner was taken into custody, and on February 3, 1999, Petitioner waived right to be Extradited from the State of Pennsylvania to the State of Illinois, see, Exhibit A, reflecting (agreement).
Also, the Petitioner was placed under a $750,000.00 bond at that time by Circuit Court of Cook County, a Judge thereof, see e.g.. Exhibit B, attached, i.e.. by the Honorable Judge Billiway.

Petitioner was in custody out of State a total of 382 days lapsed from the date of February 3, 1999 to March 1, 2000 and another 366 days lapsed until trial, leaving a total of 1,046 days with no excuse under the criminal extradition act, Article 9 and 10 provisions violated to dismiss with prejudice.

Petititioner was extradited from the State of Pennsylvania to the State of Illinois under UNIFORM EXTRADITION ACT on March 1, 2000, Counsel wasn't appointed until April 18, 2000.
Pursuant to the Court's Order compelling Petitioner to be extradited from the State of Pennsylvania to the State of Illinois resulted in the state's failure to comply with the Speedy Trial Act in accordance with 725 ILCS 5/114-1.

Petitioner contends that his rights, as guaranteed him by the first, fourth, sixth, eigth and fourteenth Amendments to the Constitution of the United States and by Article I, Sections 2, 6 7,8,10,12 and 13, of the Illinois Constitution of 1970 have been violated.
Fact that Petitioner is imprisoned elsewhere does not prevent running of 120-day period within which person in custody must be tried by Court if authorities know or are charged with knowledge of Petitioner's whereabouts. Parsons, 363 N.E.2d 396.
Right to a Speedy Trial is based, at least in part, on right of individual to be at liberty. Smith, 336 N.E. 2d 636.
The United States Supreme Court has held that a flexible standard based upon practical consideration is to be used to determine whether denial of speedy trial has occured. Speedy Trial guarante recognizes that prolonged delay may subject accused to emotional distress that can be presumed to result in uncertainties that a prompt trial removes where the prospect of facing public trial or of receiving a sentence longer than or consecutive to the one presently being served, where the desires or inconvienence of individuals are not controlling on the deprivation questions of the right to Speedy Trial. Public interest and Constitutional guarantee command disposition of criminal charges.
Strunk v. United States, 93 S. CT. 2260.
The Illinois Speedy Trial Act provides an enforcement mechanism for violations of the Constitutional Rights to a Speedy Trial, Ill. Const., 1970 , Art, I Section 8. Morris. 3 Ill. 2d 437, 121 N.E.2d 810. Every person not tried in accordance with this Section; (725 ILCS 5/103-5(d) shall be discharged from custody.

The right to a Speedy Trial is guaranteed by both, the federal and State Constitution, United States Constitution, Amends, 6, 14, Ill. Const., 1970 Art. I, Section 8. This Constitutional right has been implemented in Illinois by the Speedy Trial Act (Ill. Rev. Stat. ch. 38. para. 103-5 (1991), now 725 ILCS 5/103-5). People v. Love, 89 Ill. 2d 436, 441 (1968).
The Speedy Trial Act is to be construed liberally, People v. Smith, 207 Ill. App. 3d 1072, 566 N.E. 2d 797-798 (5th Dist. 1991) It is the States burden to bring a defendant to trial within the time provided by statute, People v. Turner, 128 Ill. 2d. 540, 539 N.E. 2d 1196, 1199 (1989). An individual's right to discharge, under the Speedy Trial Statute is waived unless a motion is made prior to the conviction, Howard, at 1345 (3rd Dist 1985). In the case at bar it was not of petitioner's culpable negligence which delayed Trial; however, quite the contrary is true where the State failed to comply with the Court's Order to bring Petitioner before the Court. Thus, delay shall not be held attributable to Petitioner as it can be easily deduced that the State intentionally delayed the proceedings colorable to the theory of lay and wait in order to structure and build a case against Petitioner. Wherefore, Petitioner avers that no delay is to be attributable to him where he diligently sought trial; therefore because his Statutory and Constitutional Rights to a Speedy Trial were violated, Petitioner respectfully request this Honorable Court to issue an Order dismissing all charges.
Petitioner was also denied his sixth Amendment right to a Trial by impartial jurors, when the Trial Court during voir dire allowed jurors that declared their bias, aswell as juror who declared he was hearing impaired and issues of not understanding english. The record in this case concerning the selection of the jury is fragmented. Of the potential jurors that were selected to sit on the jury, one, a Mr. Vega, who was hearing impaired and could not understand English was ultimatly selected as a juror to hear Petitioner's case, is enough to call into question the verdict. At stake here is the Petitioner's guaranteed right under the Sixth Amendment to an impartial jury; the principal way this right is implemented is through the system of challenges exercise during the voir dire of prospective jurors.
United States v. Martinez-Salazar, 120 S. Ct. 744 (2000) the question of whether to seat a biased juror is not a discretionary or strategic decision. The seating of a bias juror who should have been dismissed for cause requires reversal of the conviction with these guidelines in mind, the Petitioner avers that because of the abuse of discretion and his unreasonable strategy at his voir dire trial stage, his Constitutional right to an impartial jury was violated.
In sum, the Sixth Amendment requirements apply regardless of whether blame for a biased juror is assigned to counsel or the court, who ultimately share the voir dire responsibility of removing bias venire-persons. Here, both failed Petitioner, wherefore, reversal and a new trial is respectfully requested.

3

These Errors singularly and in combonation, created a substantial prejudice which could not be overcome such as (A) The ineffective assistance of Counsel Pre-trial Motions practice was deficient and unreasonable, tentamount to no Counsel whatsoever, as none, because: of a failure to properly investigate the case: niether singular nor collectively did probable cause exist, upon hearsay of witness, who at that time between arrest and indictment, made no such incriminating statement as a entirely circumstantial case see, trial testimony of such:" I would be a lie if I say I did see the face, and I would be a lie if I say I didn't".
It was the ineffectiveness of Counsel, for first, not deposing say state witness, who he knew had testified at a subsequant trial which this state witness improved their alledged identification with a fabricated, statement, of she saw and talked with Petitioner who allegedly told her that he was going to kill".
Had Appointed Counsel been allowed during the detainer duration Consel could have interviewed this statement and then developed concrete evidence that witness never saw Petitioner and fabricated this alleged encounter and thus, that alleged incrimination, where Counsel was denied while in the state of Pennsylvania, Appointed Counsel upon production had a duty and obligation to conduct a investigation and failed.
It was inexcusable, because while Petitioner was under custody in Pennsylvania, Counsel appointed failed to know the alleged two inch up close shooting did not happen as the County Forensic Expert Cook County Coroner, testified, their would be snoot if and had the shot been up close as powder particles from discharge Counsel failed to properly interview the Coroner, or Counsel would have known to impeach witness' prior to her testimony, by a motion to Limine at the minimum or call a Expert.
After Co-defendant, was acquited, the State witness illegally sought to improve her testimoy, through fabrication evident from the absence of snoot, gun powder residue particles not present, where Counsel did nothing and a all together different conclusion would have had to render; rule 38 .
The trial Court Errored upon Ineffective Assistance of Counsel's failure to properly investigate both before production and after and this required at the minimum for Counsel to interview a defense witness who was at the crime scene and and call a Expert on bullistics with failure to call co-defendant to vendicate Petitioner. that error was beyond harmless and the trial Court errored once it admitted this evidence; because it was the fruit of the Poisonous Tree doctrine, in violation of the 4th and 14th Amend, injunction with the Ill. Const. Art.I. Sect. 2 Due Proc. and Equal Protection.
   Wherefore,.reversal and a new Trial is respectfully requested.

Fraud Upon The Court

Under Illinois and federal law, when any officer of the court has committed "fraud upon the court", the order and judgment of that court are void, of no legal force or effect.

It is also clear and well-settled Illinois law that any attempt to commit fraud upon the court vitiates the entire proceeding. The People of the State of Illinois V. Fred E. Sterling, 357 Ill. 354; 192 N.E. 229 (1934) ("The maxim that fraud vitiates every transaction into which it enters applies to judgments as well as to contracts and other transaction .

**ARGUMENT**

The Cook County State's Attorney, along with the Chicago Police and State's Witness Kuwana Fleming, colluded in a "deliberately planned and executed scheme", to mislead and deceive the Petitioner, Court, Jury, and the people of the State of Illinois by knowingly allowing State Witness Kuwana Fleming to give inconsistant false testimony to the court and jury, and also the Cook County States Attorney and Defense Attorney withheld Co-Defendant Steve Jones testimony from Petitioner's trial, who was acquitted and whose testimony would have exonerated Petitioner of being the perpetrator of the crime in the instant case.

The U.S. Supreme Court has concluded that State Prosecuting Attorney's are guilty of perpetrating a falsehood and fraud upon the court by permitting false testimony to go uncorrected. It stated:

"In <u>Napue V. Illinois</u>, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed. 2d 1217 (1959), the United States Supreme Court confirmed the principle that "a state may not knowingly use false evidence, including false testimony, to obtain a tainted conviction". Id at 269, 79 S.Ct. at 1177. We have similarly held, "it is, of course, an established principle that a conviction obtained through the knowing use of materially false testimony may not stand, a prosecuting attorney has an affirmative duty to correct the testimony of a witness which he knows to be false.

In <u>Giglio V. United States, 92 S.Ct. 763 (1972)</u>, court noted that the presentation by the prosecution of known, false evidence is not compatible with the basic demands of justice and that the same analysis applies when the prosecution allows false testimony to go uncorrected. It held that a new trial is required if the false testimony could in any reasonable likeihood have affected the jury's verdict. In <u>Giglio</u>, the court noted that the government's case rested almost entirely on the witness's testimony and that accordingly, his credibility was an important issue.

When the state obtains a conviction by using uncorrected testimony that the prosecutor knows to be false, a miscarriage of justice, which no civilized society can tolerate, has occurred.

Relevant portions of State's witness Kuwana Fleming's testimony follow:

On cross examination, Fleming acknowledged that she was greatly upset by Clark's death and was hysterical at the time

of the shooting. She had as much to drink that night as Clark, whose blood alcohol was above the legal limit. Fleming testified that she did not tell the police or her friends, except for Mattie, about defendant's threat of Clark before the shooting because she did not think he was serious. On the night of the shooting she told Detective Higgins about the threat and that she had told defendant to "stop the crazy nonsense." She also told the police that defendant was on crutches. Fleming acknowledged that she spoke to a State's attorney at 2:35 a.m., the morning after the shooting, but she did not tell her about her conversation with defendant earlier in the day. She also failed to mention the conversation in her written statement.

Fleming further testified during cross-examination she spoke with an attorney named Graney in April 1999. Graney asked Fleming is she saw the face of the people in the Mustang. Fleming denied responding that "it would be a lie if she said I did and it would be a lie if I said I didn't." defense counsel then read from the transcripts of May 1999 court proceeding in which Fleming testified as to her conversation with Graney. The transcript read as follows:

> "Question: Do you remember Mr. Graney asking you whether or not you told Mr. Dickman if you, whether or not you saw the faces of the men in the car on January 28th and you said I can't say that I did and I can't say that I didn't.

> "Answer: Those were not my exact words. I said it would

be a lie if I said I did and I (sic) would be a lie if I said I didn't because he was trying to make me --- remember something I didn't want to remember. I told him I didn't want to remember it because that's something painful to me. That's exactly what I told him."

During cross-examination, defense counsel asked Fleming about a conversation she had with Bruce Dickman, an attorney, who came to interview her at her house. Fleming testified that she told Dickman that she did not feel like talking. Fleming denied that she told him that she never really saw the faces of the people in the car or that she assumed that Jones and defendant were in the car because she had seem them earlier that day. The defense later called Dickman who testified that he spoke to Fleming on July 2, 1998. Fleming told him that she never really saw the faces of the men in the car and that she just assumed Jones and defendant were in the car. According to Dickman, Fleming's assumption was based on her observation of Jones and defendant earlier that afternoon and the fact that she recognized Jone's car and she saw defendant's hair in dread locks. Dickman acknowledged that he did not disclose to Fleming that he was representing Jones at the time of the interview.

During cross-examination of Dickman, the State asked him if Fleming had told him that she heard defendant say that "he would shoot the victim, Steve Jones, who was not present at the time?" Defense counsel made a general objection which the court overruled. The State continued by asking Dickman whether

Fleming had told him that "[t]he victim had shot Steve Jones in self-defense," to which Dickman replied. "Yes." SEE: Order of Appellate Court of Illinois First Judicial District, Fourth Division, September 30, 2004, Page 3, 4 and 5, <u>People of the State of Illinois V. Steve McNiel</u>, No. 1-0202597.

"The Court has broadly defined fraud as any conduct calculated to deceive, whether it be by direct falsehood or by innuendo, by speech or silence, by word of mouth, by look, or by gesture. Fraud includes the suppression of the truth, as well as the presentation of false information. (<u>In re Witt</u> 1991) 145 Ill. 2d 380, 583 N.E. 2d 526, 531, 164 Ill. Dec. 610)." See also <u>In re Frederick Edward Strufe</u>, Disciplinary case no. 93 SH 100 where the Court stated that "Fraud has been broadly defined as anything calculated to deceives."

It is clear and well-established Illinois law that any attempt by any officer of the court, whether attorney or judge, to deceive is considered fraud, and when the attempt to deceive occurs in a judicial proceeding, it is "fraud upon the court."

A judge is not the court. <u>People V. Zajic</u>, 88 Ill. App. 3d 477, 410 N.E. 2d 626 (1980). A judge is a state judicial officer, paid by the State to act impartially and lawfully. A judge is also an officer of the court, as well as are all attorneys.

There is no time limit or laches applies to relief based on fraud upon the Court because fraud on the Courts concerns the integrity of the judicial process itself, a judgment may

9.

be set aside for fraud on the Court at any time. There is not time limit on any party or court. After all, in the leading case. <u>Hazel-Atalas Glass Co. V. Hartford Empire Co.</u>, 64 S.Ct. 997 (1944), the U.S. Supreme Court acted in 1944 to tell the Third Circuit that it should set aside its 1932 judgment because it was procured by Fraud on the Court.

As the Supreme Court noted in <u>Hazel-Atlas,</u> supra, "The Circuit Court thought that <u>Hazel</u> had not exercised proper diligence in uncovering the fraud and that this should stand in the way of relief but "even if <u>Hazel</u> did not exercise the highest degree of diligence, Hartford's fraud cannot be condoned for that reason alone... Tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud.

The United States Supreme Court has made it clear "the law favors discovery and correction of the judicial process even more than it requires an resolution to cases." <u>See: Bracy Gramely,</u> 520 U.S. 899, 909, 117 S.Ct. 1793, 138 L.Ed. 97 (1997).

There is an irrefragable linkage between the court's inherent powers and the rarely encountered problem of fraud on the court. Courts cannot lack the power to defend their integrity against unscrupulous marauders, if that were so, it would place at risk the very fundamental of the judicial system.

The Supreme Court of the United States further ruled in the leading case concerning fraud upon the court, Hazel-Atlas, supra, "All in all, we find it surpassingly difficult to conceived of a more appropriate use of a court's inherent power than to protect the sanctity of the judicial process - to combat those who would dare to practice unmitigated fraud upon the court itself. To deny the existence of such power would, we think, foster the very impotency against which Hazel-Atlas court specifically warned."

Federal Appeals Courts have determined that, "specific court which is the victim of the fraud is the only court that can reconsider its own judgment." See: Taft V. Donell Jerome, Inc. 407 F.2d 807, 809 7th Cir. 1969).

Wherefore, reversal and a new Trial is respectfully requested.

Respectfully Submitted,

STEVIE MCNEIL

11.

| | |
|---|---|
| Defendant's Name: ███████████ | **POLICE CRIMINAL COMPLAINT** |
| Docket Number: | Exhibit A |

all of which were against the peace and dignity of the Commonwealth of Pennsylvania and contrary to the Act of Assembly, or in violation of

1. 9121 Uniform Extradition Act 42 PA C.S. One
   (Section) (Subsection) of the (PA Statute) (Counts)

2. ____ ____ of the ____ ____
   (Section) (Subsection) (PA Statute) (Counts)

3. ____ ____ of the ____ ____
   (Section) (Subsection) (PA Statute) (Counts)

4. ____ ____ of the ____ ____
   (Section) (Subsection) (PA Statute) (Counts)

I ask that a warrant of arrest or a summons be issued and that the defendant be required to answer the charges I have made. (In order for a warrant of arrest to issue, the attached affidavit of probable cause must be completed and sworn to before the issuing authority.)

I verify that the facts set forth in this complaint are true and correct to the best of my knowledge or information and belief. This verification is made subject to the penalties of Section 4904 of the Crimes Code (18 PA. C.S. § 4904) relating to unsworn falsification to authorities.

February 3 , 19 99     _Deputy John _____
                       (Signature of Affiant)

NOW, on this date ___3/3___, 19 _99_, I certify that the complaint has been properly completed and verified. An affidavit of probable cause must be completed in order for a warrant to issue.

___06-2-1___                    _____ SEAL
(Magisterial District)          (Issuing Authority)

2 - 3

Defendant's Name:
Docket Number:

Exhibit B

## AFFIDAVIT of PROBABLE CAUSE

AFFIANT RECEIVED TELETYPE FROM COOK COUNTY, ILLINOIS INFORMING US OF A WARRANT ISSUED IN COOK COUNTY FOR SUBJECTS ARREST. SUBJECT IS CHARGED WITH MURDER I AND BOND WAS SET AT $750,000.00 CASH BY JUDGE BILLIWAY IN COOK COUNTY, ILLINOIS.

(SEE ATTACHED COPIES OF WARRANT FROM COOK COUNTY, ILLINOIS)

I, _Deputy John Learnil_, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE FOREGOING AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

_____
(Signature of Affiant)

Sworn to me and subscribed before me this __3rd__ day of __Feb__, 19__99__.

__2/3/99__ Date

_____, District Justice

My commission expires first Monday of January, _____.

SEAL

3 - 3

.12- (5/96)